UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| Stemmons Enterprise, L.L.C., § | |
| § | |
| *Plaintiff,* § | |
| § | Case No. 4:22-cv-01487 |
| v. § | |
| § | |
| Fisker, Inc. § | |
| § | |
| *Defendant.* § | |

## **MEMORANDUM AND RECOMMENDATION**

Before the Court is Defendant Fisker, Inc.'s ("Fisker") motion to dismiss Plaintiff Stemmons Enterprise, L.L.C.'s ("Stemmons") request for specific performance. Dkt. 22. This case was referred to the undersigned judge. Dkt. 14. After carefully considering the motion, response, Dkt. 23, reply, Dkt. 24, and the applicable law, it is recommended that Fisker's motion be granted.

### **Background**

In April 2022, Stemmons sued Fisker in Texas state court. Dkt. 1-3. Fisker timely removed the suit on the basis of diversity jurisdiction. Dkt. 1 ¶¶ 4, 10, 11. Stemmons moved to remand, contending that the parties' License Agreement waived Fisker's removal rights. *See* Dkt. 8. The Court denied the motion to remand, after which Stemmons amended its complaint again.

Dkt. 16 (Order adopting Memorandum and Recommendation, Dkt. 15); Dkt. 17 (Second Amended Complaint).

Stemmons's Second Amended Complaint (the "Complaint") alleges that, in December 2016, the parties executed three contracts to facilitate Stemmons's investment in Fisker and Fisker's use of Stemmons's software for its digital car sale operations. Dkt. 17 ¶¶ 9-10. Those agreements were (i) a software License Agreement, (ii) a Referral Agreement that enabled Fisker to earn fees by promoting Stemmons's software to other potential licensees, and (iii) a Share Purchase Agreement. *Id.* ¶ 10.

The first two agreements are implicated in this suit. Stemmons alleges that Fisker breached the License Agreement by failing to use the licensed software "throughout its business, and all divisions, subsidiaries, and affiliates, to achieve the *widest possible use*." *Id.* ¶¶ 11, 33 (quoting the License Agreement, Schedule A § 2) (emphasis added). Stemmons alleges that it expected Fisker to use its software "throughout all departments and divisions of the company as the single interface to access all company information and systems." *Id.* ¶ 11. But because Fisker had few employees when the agreements were signed, Stemmons agreed that Fisker may designate as few as 10 users per year (for a total of $3,000 per year), until its employee base increased. *Id.* ¶ 14.

This dispute arose over whether the License Agreement obligated Fisker to pay a $300 per user fee for "every employee with access to the software"—as Stemmons maintains, *see id.* ¶¶ 14-15, 30, 33—or whether it merely required Fisker to pay the minimum $3,000 per year, plus $300 per user for whom the software's use was "possible." Dkt. 22 at 1-2; Dkt. 24 at 4. Based on its interpretation of the License Agreement, Stemmons seeks monetary damages and a declaratory judgment "that the plain and unambiguous meaning of the License Agreement requires Fisker to use the Stemmons Software in its computer systems throughout its business in every way possible and to designate as users and pay a license fee for all employees and contractors who use Fisker's computer systems." *Id.* ¶¶ 30 (declaratory judgment claim), 36-37 (breach of contract claim). Stemmons also requests specific performance as an alternative, "[i]n the event that damages are not an adequate remedy for Fisker's failure to perform under the License Agreement." *Id.* ¶ 39.

## Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Rather, "the complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim." *See Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (analyzing *Twombly*, 550 U.S. at 555-56).

## Analysis

The only issue raised in Fisker's motion concerns the remedy of specific performance. Fisker argues that this remedy is not available because Stemmons "can be made whole by an award of money damages." Dkt. 22 at 2. Stemmons counters that a Rule 12(b)(6) motion is not the proper vehicle for dismissing remedies and whether specific performance is appropriate must await discovery. Dkt. 23 at 3-4.

Because Stemmons has not adequately pleaded a basis for specific performance, it is recommended that the Court exercise its discretion to dismiss this alternative relief and grant Fisker's motion.

I. **Stemmons does not allege that monetary damages would be inadequate.**

"Under Texas law, specific performance is an equitable remedy that is normally available only when the complaining party cannot be fully compensated through the legal remedy of damages or when damages may not

4

be accurately ascertained." *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 153 (5th Cir. 2004). To obtain specific performance, a plaintiff must prove "that there is no adequate remedy at law to compensate it for its loss." *5436, LLC v. CBS Corp.*, 2009 WL 3378379, at *3 (S.D. Tex. Oct. 16, 2009) (characterizing this as the "most important[]" element" for obtaining specific performance). At the pleading stage, a plaintiff "need not 'allege in express terms that [it] does not have an adequate legal remedy' so long as 'the facts brought out in the pleadings show such to be the case.'" *Id.* at *4 (quoting *Madariaga v. Morris*, 639 S.W.2d 709, 711-12 (Tex. App.—Tyler 1982, writ ref'd n.r.e.)).

Stemmons neither expressly alleged that damages would be inadequate to compensate for Fisker's alleged breach, nor did it allege underlying facts that would imply the inadequacy of damages. Instead, Stemmons's request for specific performance is framed as a secondary alternative to its request for damages. *See* Dkt. 17 ¶¶ 39 ("*In the event that damages are not an adequate remedy* for Fisker's failure … Fisker requests an order of specific performance.") (emphasis added), 43(b) (praying for an order of specific performance "*if it is shown that such damages* are an inadequate remedy") (emphasis added). Such language does not satisfy Stemmons's burden to allege the key element of specific performance.

In fact, the allegations Stemmons did plead indicate that monetary damages would adequately compensate for the breach. Stemmons alleges that

5

it issued invoices for 100 and 300 licensees, respectively, in 2021 and 2022. Dkt. 17 ¶¶ 22-23, 26-27. In other words, Stemmons was able to calculate and demand payment for the amounts it alleges it is owed for its software licenses in 2021 and 2022. *Id.* ¶¶ 36-37 (alleging damages in the form of unpaid 2021 and 2022 invoices). Stemmons argues that it cannot know the precise number of users for whom it was owed licensing fees until discovery is conducted. Dkt. 23 at 4-5. But the mere fact that the amount of monetary damages is unknown at this stage does not mean that the damage is unquantifiable or that monetary relief would be inadequate.

Moreover, Stemmons alleges that the License Agreement "protected" Stemmons's investment by imposing a 10-year contract term that would only renew annually if or until Stemmons recouped its $500,000 investment via licensing fees or referral fees under the Referral Agreement. Dkt. 17 ¶ 16; *see also* Dkt. 22-1 at 22 (Schedule A to Licensing Agreement); Dkt. 1-3 at 47-53 (Referral Program Agreement); *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (authorizing courts to consider contracts that were attached to a Rule 12(b)(6) motion to dismiss, "referred to in the complaints, and ... central to the plaintiffs' claims"). Stemmons acknowledged that the $500,000 cap would prevent nuanced, protracted intervention by the Court if specific performance were awarded. Dkt. 23 at 5 ("[O]nce the Court has resolved the parties' dispute over the meaning of the contract language, an

6

order of specific performance can be crafted to require Fisker [to] comply," whereby Fisker would "simply use the software throughout its business as agreed and pay the licensing fee for all [designated users]."). Stemmons even calculated a hypothetical sunset date for the License Agreement: "Even if past damages for unpaid licensing fees are ignored, Fisker could cancel the agreement in just three years if, in complying, Fisker paid for approximately 556 DUs each of those years (555 x $300 x 3)." *Id.* Accordingly, if Stemmons prevails on its interpretation of the contract, it has already identified adequate remedies at law. Stemmons can calculate how many licensing fees it was owed in 2021 and 2022, and it may seek to bind Fisker in License Agreement renewals until those fees reach the maximum amount of $500,000.[1]

The Court therefore finds that Stemmons failed to plead that damages would not constitute an adequate remedy at law—a requisite element of specific performance. *See 5436, LLC*, 2009 WL 3378379, at *4 (concluding plaintiff's failure "to state facts showing or explaining why damages would not

---

[1] Because Stemmons failed to allege the inadequacy of money damages as compensation for Fisker's alleged breach, the Court need not address Fisker's argument that the administration of specific performance "would mire the court in overseeing the parties' relationship for years." *See* Dkt. 22 at 2. That is because the practicability of specific performance is an equitable consideration that the Court may consider *if* plaintiff first shows that there is no adequate remedy at law. *5436, LLC*, 2009 WL 3378379, at *3 ("[I]n addition to the necessary elements" of specific performance, such as the lack of an adequate remedy at law, "the Texas courts often consider other equitable factors."). Stemmons failed to make the threshold showing, which moots any further equitable grounds for rejecting specific performance.

7

adequate compensate it for [the] alleged breach" justified the dismissal of a request for specific performance).

## II. Stemmons's request for specific performance is inconsistent with its claim for damages.

Stemmons argues that, irrespective of specific allegations, it is procedurally improper to user a Rule 12(b)(6) motion to dismiss a remedy. Dkt. 24 at 3-4. Stemmons is correct insofar that, "in general, when a party requests alternate relief on the same underlying claim, the unavailability of one type of relief should not garner a motion to dismiss under Rule 12(b)(6)." *Morrison v. Marathon Petroleum Co., LP*, 2021 WL 1739243, at *4 (W.D. Tex. May 3, 2021). Nevertheless, courts have discretionary authority to dismiss alternative requests for relief that "'need not be permitted' when [they] 'add[] nothing to an existing lawsuit.'" *Id.* at *4 (quoting *Cypress/Spanish Ft. I, L.P. v. Pro. Serv. Indus., Inc.*, 814 F. Supp. 2d 698, 710 (N.D. Tex. 2011)); *5436, LLC*, 2009 WL 3378379, at *3, 5 (concluding that specific performance is a discretionary remedy that was unavailable to the plaintiff, even though the claim for breach of contract survived dismissal). As addressed *supra*, the Complaint contains numerous allegations indicating that monetary damages would indeed be adequate. As a result, the remedy of specific performance—couched as a mere secondary request—adds nothing to this lawsuit.

8

Moreover, Texas courts treat the remedies as exclusive alternatives, such that "parties suing for breach of contract 'must elect to sue either for money damages or specific performance.'" *Morrison*, 2021 WL 1739243, at *4 (quoting *Goldman v. Olmstead*, 414 S.W.3d 346, 361 (Tex. App.—Dallas 2013, pet. denied)); *Scott Pelley P.C. v. Wynne*, 2017 WL 3699823, at *14 (Tex. App.—Dallas Aug. 28, 2017, pet. denied) (even outside the real estate context, "[r]ecovering economic damages for breach of contract and obtaining specific performance of a contract are inconsistent, alternative theories for relief"); *Holmes v. Jetall Companies, Inc.*, 2016 WL 3662645, at *8 (Tex. App.—Houston [14th Dist.] July 7, 2016) (same); *Davis v. Luby*, 2010 WL 3160000, at *3 (Tex. App.—San Antonio Aug. 11, 2010, no pet.) ("Because specific performance is an equitable remedy available only when the legal remedy of damages is insufficient … one must elect to sue for either money damages or specific performance."). Though there are "narrow circumstances" in which monetary compensation is associated with specific performance, such compensation is "incident to a decree for specific performance and does not amount to legal damages for breach of contract." *Goldman*, 414 S.W. 3d at 361-62.

Here, the Complaint details the basis for Stemmons's monetary damages for its breach of contract claim. Dkt. 17 ¶¶ 36-37 (citing unpaid amounts in 2021 and 2022 invoices). Those same allegations cannot simultaneously support the inconsistent remedy of specific performance. Dismissal of

9

Stemmons's alternative request is therefore warranted. *See Morrison*, 2021 WL 1739243, at *4 ("Because Plaintiffs have elected to sue for money damages[,] there is no basis for specific performance under Texas law.").

### Recommendation

For the foregoing reasons, it is **RECOMMENDED** that the Court **GRANT** Defendant's motion to dismiss (Dkt. 22) and **DISMISS** Plaintiff's request for specific performance (Dkt. 17 ¶¶ 38-39).

The parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error. *Ortiz v. City of San Antonio Fire Dep't*, 806 F.3d 822, 825 (5th Cir. 2015).

Signed on March 27, 2023, at Houston, Texas.

_____
Yvonne Y. Ho
United States Magistrate Judge